Thomas M. Corea, Esq.
Texas Bar No. 24037906
Jessica Sharma Graham, Esq.
Texas Bar No. 24045967
**THE COREA FIRM P.L.L.C.**
Renaissance Tower
Forty First Floor
1201 Elm Street
Dallas, Texas 75270
Telephone:      214.953.3900
Facsimile:      214.953.3901

J. Mark Mann, Esq.
Texas Bar No. 12926150
**THE MANN FIRM**
300 W. Main
Henderson, TX 75652
Telephone:      903.657.8540
Facsimile:      903.657.6003

George A. Otstott, Esq.
Texas Bar No. 15342000
Ann Jamison, Esq.
Texas Bar No. 000798278
**OTSTOTT & JAMISON, P.C.**
Two Energy Square
4849 Greenville Avenue, Suite 1620
Dallas, Texas 75206
Telephone:      214.522.9999
Facsimile:      214.828.4388

**ATTORNEYS FOR PLAINTIFFS**

## IN THE UNITED STATES DISTRICT COURT
### FOR THE EASTERN DISTRICT OF TEXAS
### MARSHALL DIVISION

| | |
|---|---|
| ARLANDO COOKS, ) | |
| KENNETH HARRISON, and ) | |
| CHARMAINE SMITH, *on behalf of* ) | |
| *themselves and all others similarly* ) | Case No:_____ |
| *situated*, ) | |
|                  *Plaintiffs,* ) | **CLASS ACTION COMPLAINT** |
| *v.* ) | |
| ) | **Jury Trial Demanded** |
| RINGLEADER DIGITAL, Inc. ) | |
|                  *Defendant.* ) | |
| _____ ) | |

Plaintiffs Arlando Cooks, Kenneth Harrison and Charmaine Smith, on behalf of themselves and all others similarly situated, for their claims against Defendant Ringleader Digital, Inc., hereby states and alleges the following facts upon information and belief as well as those upon their first-hand knowledge.

## I.

## PARTIES, JURISDICTION AND VENUE

**A.      The Parties.**

1.      Plaintiff Arlando Cooks resides in the Marshall Division of the United States District Court for the Eastern District of Texas, in the City of Jefferson, Marion County, State of Texas.

2.      Plaintiff Kenneth Harrison resides in the Marshall Division of the United States District Court for the Eastern District of Texas, in the City of Marshall, Harrison County, State of Texas.

3.      Plaintiff Charmaine Smith resides within the judicial district boundaries for the United States District Court for the Eastern District of Texas, in the City of Nacogdoches, Nacogdoches County, State of Texas.

4.      Plaintiffs Arlando Cooks, Kenneth Harrison and Charmaine Smith (hereinafter, collectively, "Plaintiffs") bring this case as a "Class Action" on behalf of themselves and on behalf of all others similarly situated.

5.      Defendant Ringleader Digital, Inc. (hereinafter, "RDI"), upon information and belief, is a Delaware Corporation, actively engaged in and conducting business in the State of Texas, within the Marshall Division of the United States District Court for the Eastern District of Texas, and maintains its principal place of business at 286 Fifth Avenue, New York, NY 10001.

6.      Service of Process by issuance and delivery of a Summons issued by the Clerk of this Court and a copy of this Complaint may be made upon RDI through its statutory Registered Agent, Corporation Service Company, with a physical address of 2711 Centerville Road Suite 400, Wilmington, Delaware 19808.

**B.      Subject Matter Jurisdiction.**

7.      This court has "federal diversity" subject matter jurisdiction over claims stated herein, pursuant to 28 U.S.C. § 1332, as one or more members of the Putative Class are residents of a different state from RDI and the amount in controversy exceeds the amount of $75,000.

8.      This court has "federal question" subject matter jurisdiction over the claims stated herein, pursuant to 28 U.S.C. § 1331, as certain causes of action alleged by the Plaintiffs herein arise under then laws of the United States of America.

9.      This court has "supplemental," "ancillary" or "pendant" subject matter jurisdiction to hear Plaintiffs' state law claims, as they are substantially related and operate from a common nucleus of operate fact as those claims alleged herein by Plaintiffs upon which this court has federal diversity and, as well, federal question subject matter jurisdiction, pursuant to 28 U.S.C. § 1367.

**C.      Personal Jurisdiction Over RDI.**

10.     General personal jurisdiction in this Court exists over RDI as it has established and engaged in, and continues to maintain as of the date of this Complaint, business contacts and activities within this District and Division, each of which are regular, systematic and substantial.

11.     This Court may properly exercise specific personal jurisdiction over RDI in this case as the causes of action stated herein are specifically related to the RDI contacts specifically directed to this forum, from which this litigation arises, and the exercise of specific personal jurisdiction over RDI by this Court is reasonable, as RDI's specifically directed forum-related

contacts with this District are such that RDI should reasonably anticipate being haled into this Court.

**D.     Venue.**

12.     Venue is proper in this Division of this District Court, pursuant to 28 U.S.C. § 1391(a)(2) and (3), as the Plaintiffs each are residents of this District and, further, RDI committed tortious conduct and engaged in the illegal conduct alleged herein within the Eastern District of Texas, Marshall Division.

13.     Venue is proper in this Division of this District Court, pursuant to 28 U.S.C. § 1391(b)(2) and (3), as this District is the location where a substantial part of the events complained of herein occurred and, also, by the facts alleged herein that RDI committed tortious conduct and engaged in the illegal conduct alleged herein within the Eastern District of Texas, Marshall Division, RDI may be found in this District.

14.     RDI, as a corporation alleged herein to be subject to personal jurisdiction in this Court, is, thus, deemed to reside in this District, pursuant to 28 U.S.C. § 1391(c), and, therefore, this District stands as a convenient forum for all of the parties the resolution of this dispute.

## II.

## THE NATURE OF THIS CASE

15.     This case concerns, and calls into question as unlawful and subject to judicial relief, at law and in equity, from the unlawfulness associated with RDI's business of extending online advertising to the mobile environments embodied by each of the Plaintiffs' and Putative Class members' cellular phones or "smart phones" and other mobile, hand-held digital cellular devices, as is alleged herein.

16.     Plaintiffs bring this case as a "Class Action" pursuant to Rules 23(a), (b)(1), (2), and (b)(3), Fed. R. Civ. P., on behalf of themselves and the Putative Class, which seeks certification of a class of plaintiffs to include the following:

U.S. Resident Class: Each and every individual who owns or owned a mobile computing device, that had a "RLDGUID" tracking number, media stamp, or other identifying tag or mark placed on that device by RDI through the use of the any feature of a web browser.

Texas Resident Class: All residents of Texas that own or owned a mobile computing device, that had a "RLDGUID" tracking number, media stamp, or other identifying tag or mark placed on that device by RDI through the use of any feature of a web browser.

Injunctive Class: All persons after the date of the filing of this complaint, residing in the United States, that own or owned a mobile computing device, that had a "RLDGUID" tracking number, media stamp, or other identifying tag or mark placed on that device by RDI through the use of any feature of a web browser.

(hereinafter, the "Putative Class")

**EXCLUDED** from the Putative Class is RDI as well as all employees of this Court, including, but not limited to, Judges, Magistrate Judges, clerks and court staff and personnel of the United States District Courts of the Eastern District of Texas, the United States Court of Appeals for the Fifth Circuit and the United States Supreme Court; their spouses and any minor children living in their households and other persons within a third degree of relationship to any such Federal Judge; and finally, the entire jury venire called for jury service in relation to this lawsuit.  Also excluded from the class are any attorneys or other employees of any law firms hired, retained and/or appointed by or on behalf of the named Plaintiffs to represent the named Plaintiffs and any/or any proposed class members or proposed class in this suit.

Furthermore, to the extent that undersigned counsel has any legal interest to damages or other monetary relief, or other relief due to the Putative Class members (or any other rights as potential putative class members), arising as.

## III.

## FACTS APPLICABLE TO ALL CAUSES OF ACTION

**A.     RDI's Business.**

17.     According to its CEO, Bob Walczak, RDI's Digital Media Stamp technology "is becoming the de facto tool for agencies and publishers looking to run highly targeted, measurable campaigns."

18.     RDI offers to is customers a "non-client-side" database compilation of each of the Plaintiffs' and Putative Class Members' private and personally identifiable information that itself possess and maintains on its Internet accessible servers, which RDI commonly refers to as its "third-party ad serving platform in mobile" environments (the "RDI Platform").

19.     The RDI Platform is used by publishers of Wireless Application Protocol ("WAP"), downloadable smart phone Applications or Short Message Service ("SMS"), *i.e.* "text," traffic, commericial advertising networks, web-traffic analytics companies, Internet publisher networks and, further, is integrated with advertising agency "buy-side" tools for web-based advertising programs and targeted campaigns.

20.     Utilizing what RDI claims is its "proprietary technology," RDI physically identifies each of the Plaintiffs' and Putative Class members' the Internet Protocol addresses ("IP Address") unique to each of their cellular phones or "smart phones" and other mobile, hand-held digital cellular devices and, internally, designates the same with its own number as a means of maintaining its own source of identification of device associated with its IP Address.

21.     RDI identifies and obtains each of the Plaintiffs' and Putative Class members' IP Address by means of its secret, unauthorized and unlawful trespass to confidential data and personally identifiable information assigned to and contained upon each of the Plaintiffs' and

Putative Class members' cellular phones or "smart phones" and other mobile, hand-held digital cellular devices.

22.     The actions of RDI complained of herein demonstrate its employment of means that unlawfully trespass upon each of the Plaintiffs' and Putative Class members' cellular phones or "smart phones" and other mobile, hand-held digital cellular devices.

23.     Plaintiffs allege that RDI, upon trespass to each of the Plaintiffs' and Putative Class members' cellular phones or "smart phones" and other mobile, hand-held digital cellular devices, seized and then transmitted and incorporated into the RDI Platform each of the Plaintiffs' and Putative Class members' private data and personally identifiable information digitally stored data on those devises.

24.     In sum, RDI built the RDI Platform through utilization of unethical and illegitimate means which constitute unlawful acts of conversion of the Plaintiffs' and Putative Class members' certain property interests as well violations of the Plaintiffs' and Putative Class members' legally and statutorily protected rights of privacy.

25.     Plaintiffs specifically allege that each of them have been personally and individually effected and otherwise made subject to the actions of RDI complained of herein.

26.     Plaintiffs' allegations concerning RDI's actions of illegally obtaining each of their private data and personally identifiable information from each of their cellular phones or "smart phones" and other mobile, hand-held digital cellular devices are specifically based upon each of their first-hand knowledge of such facts and events alleged herein.

**B.     RDI's Spying On and Tracking Of Plaintiffs and Putative Class Members.**

27.      Based upon the facts alleged herein, RDI has been unjustly enriched, at the expense of the Plaintiffs and Putative Class Members, through employment of secret means and undisclosed actions in order to build create and then market the RDI Platform.

28.     RDI built and created the RDI Platform only by digitally trespassing to each of the Plaintiffs' and Putative Class members' cellular phones or "smart phones" and other mobile, hand-held digital cellular devices, which it then captured and then transmitted the Plaintiffs' and Putative Class members' private data and personally identifiable information digitally stored data on those devises.

29.     In addition, Plaintiffs' further allege that RDI, upon capturing and reviewing the Plaintiff's and Putative Class members' private and personally identifiable information contained on each of the each of the Plaintiffs' and Putative Class members' cellular phones or "smart phones" and other mobile, hand-held digital cellular devices, RDI then proceeded to "brand" each of those devises with its own proprietary "Digital Media Stamp"  whereby it assigned each a unique "tracking number" in order to tack the physical location and Internet usage of the Plaintiffs and the Putative Class members.

30.     Plaintiffs allege that navigating the Internet without knowing if they or any other members of the Putative Class will encounter RDI's "Digital Media Stamp" technology is, in actuality, impossible because neither RDI nor its customers provide advance notice or other warning to Internet users before entering a website which will expose that Internet user to RDI's Digital Media Stamp and individually assigned unique tracking number.

31.     By placing the Digital Media Stamp and individually assigned unique tracking number on RDI customer websites, commonly individual advertisers and digital publishers, RDI "captures" (and it is hereby alleged has, in fact, "captured") the Plaintiffs' and the Putative Class members' confidential data and personally identifiable information stored upon or otherwise accessible through RDI's inspection of the Plaintiffs' and Putative Class members' cellular phones or "smart phones" and other mobile, hand-held digital cellular devices.

32.     RDI's capturing and branding each of the Plaintiffs' and Putative Class members' cellular phones or "smart phones" and other mobile, hand-held digital cellular devices with the Digital Media Stamp and individually assigned unique tracking number, RDI is able to, and it is alleged herein that it actually does, "track" of each of the Plaintiffs' and Putative Class members' cellular phones or "smart phones" and other mobile, hand-held digital cellular devices, physically, as well as the Internet usage on each of the same.

**33.**     RDI's system of "tracking" is achieved through its utilization of more than 100 "discriminators," such as each of the Plaintiffs' and Putative Class members' time zones, type and functions of their mobile device's Internet browser, each of the Plaintiffs' and Putative Class members' personally chosen and set "web bookmarks" and the IP Address unique to identification of each and every one of the Plaintiff's and the Putative Class members' cellular phones or "smart phones" and other mobile, hand-held digital cellular devices.

**C.     RDI's Digital Media Stamp—What It Is.**

34.     RDI describes its Digital Media Stamp on its own website, at: *http://m.ringleaderdigital.com/mediastamp-faq.rbml*, as a "Digital Global User ID" which it assigns and, in fact has assigned, to each of the Plaintiffs' and Putative Class members' cellular phones or "smart phones" and other mobile, hand-held digital cellular devices and implants such on that devise.

35.     RDI states on its own website, at: *http://m.ringleaderdigital.com/mediastamp-faq.rbml*, that its Digital Media Stamp is, in fact, the means upon which it, as a third-party advertising service provider to various Internet-based advertisers and others, is able to "deliver targeted advertising to consumers."

36.     RDI's "Privacy Policy" stated on its website, at: *http://ringleaderdigital.com/privacy-policy*, RDI describes its Digital Media Stamp technology as

a tool which "collects data" by use of "a number of technologies to establish the uniqueness of the device's browser when your mobile device requests an ad from one of our participating web sites, all for the purpose of delivering a more personalized mobile advertising experience."

37.     Furthermore, RDI proclaims in its online Privacy Policy, at: *http://ringleaderdigital.com/privacy-policy*, that "one" of such "technologies" utilized by its Digital Media Stamp system is "cookies, including standard mobile cookies (which reside in the device's browser) and content cache cookies (which reside in the device browser's content cache)."

38.     More telling, however, is the fact that, in direct contradiction to statements located in higher profile and more user accessible portions of its website, RDI states in its Privacy Policy, at: *http://ringleaderdigital.com/privacy-policy,* that it, in fact, is also engaged in the "use HTML5 technology, where available, on mobile devices."

39.     Ironically, RDI proceeds to state that "HTML5" is "[l]ike cookies, [HTML5] allows [RDI] to store a unique identifier on your device so that [RDI] recognize[s] it when the mobile device requests an ad from one of [RDI's] participating web sites," which is an entirely misleading and, moreover, inaccurate description of HTML5 technology and, most importantly, RDI's use of HTML5 technology.

**D.     RDI's Digital Media Stamp Is Not a "Cookie."**

40.     A "cookie**"**, also known as a "web cookie," or a "browser cookie**"**, and an "HTTP cookie," is a piece of text stored by a web user's Internet web browser.

41.     A cookie can be used for: authentication purposes of a computer systems and certain mobile devices; digitally storing a web user's persoanlly selected website "preferences"; a user's "shopping cart" contents on certain web-based product retailers; an "identifier" for a

web server-based Internet usage session; or anything else that can be accomplished through storing text data.

42.     Contrary to what RDI misrepresents on its website, its Digital Media Stamp, in fact, nothing like a "cookie" because, unlike a cookie, the Plaintiffs' and Putative Class members' cellular phones or "smart phones" and other mobile, hand-held digital cellular devices, once branded by RDI's Digital Media Stamp, are unable to delete the Digital Media Stamp, which is , in actuality, referred to as a "zombie cookie" because it is a "cookie that re-populates if removed or otherwise continues to be implanted on the given devise and thereby persistently controlling the same.

43.     Each of the Plaintiffs' and Putative Class members' cellular phones or "smart phones" and other mobile, hand-held digital cellular devices possess "privacy settings" that that enable each of them to voluntarily make the choice if they wish to delete cookies, block all cookies, accept only certain cookies or in only certain or given web-encountered circumstances.

44.     RDI's Digital Media Stamp, unlike a traditional "cookie" often used by many online advertisers, cannot be deleted, blocked or user controlled in any fashion in its intended mobile environment or otherwise.

45.     Rather, once the Plaintiffs' and Putative Class members' cellular phones or "smart phones" and other mobile, hand-held digital cellular devices were (and have been) branded by RDI with its Digital Media Stamp, those devises are forever subject to the RDI Platform and the acts of its users.

**E.     RDI's Digital Media Stamp Uses "HTML5."**

46.     Contrary to RDI's representations, RDI, in fact, uses, and it is hereby alleged, "client-side database-storage capability" unique to "HTML5" as a substitute for the "traditional cookie" tracking employed by many major online ad companies.

47.     "HTML5" (*i.e.,* Hypertext Markup Language, "HTML", Version 5) is considered the next major revision of HTML in the software and Internet computing industry.

48.     As a point of reference, Plaintiffs note that "HTLM" is the core markup language utilized for the use and operation of the World Wide Web.

49.     The significance of RDI's use of HTML5 technology in connection with its secret gathering of confidential data and personally identifiable information and integration into the RDI Platform is that, unlike prior generations of the HTML technology, HTML5 is uniquely capable of the integration of certain technologies or features which make more vulnerable than ever all data and personally identifiable information stored upon and otherwise available by RDI's inspection of the Plaintiffs' and the Putative Class members' cellular phones or "smart phones" and other mobile, hand-held digital cellular devices.

50.     Plaintiffs hereby allege that RDI is and has been engaged in the utilization and other exploitation of HTML5's unique technological capabilities and features, including:

- A method commonly known as "geolocation," which allows RDI and its customers, whom upon information and belief in fact have, correctly pinpoint the Plaintiffs' and the Putative Class members', as mobile device users,' precise physical locations via "WiFi" towers and Global Position Satellite ("GPS") systems;

- Advanced mobile, downloadable video technology (without use of traditional "plug-ins"), known as "Video Element," thereby allowing RDI and is customers to, whom upon information and belief in fact have, receive, copy and transmit such stored video data (in violation of Copyright laws); and,

- Certain "offline web applications" which allows RDI and is customers to, whom upon information and belief in fact have, direct access to specific Internet sites (such as the

Plaintiffs' and the Putative Class members' private email) while the Plaintiffs and the Putative Class members are not connected to the Internet.

**F.      Once Branded By RDI, There Is No Way Out.**

51.     RDI attempts to convince the Plaintiffs and Putative Class members that they may "opt-out" of the RDI Platform by attempting to explain, via its website, at: *http://m.ringleaderdigital.com/mediastamp-faq.rbml*, that "[c]onsumers interested in opting-out can paste the following URL into their mobile browser: http://ringleaderdigital.com/optout.php" and when that consumer (*i.e.,* web user) "opts-out," RDI purportedly will "register the fact that they have opted-out server-side, and no longer use the [Digital Media Stamp] for any purpose other than to know that they are opted-out."

52.     However, what RDI describes as an ability to "opt-out" from its services completely ignores the fact, which Plaintiffs hereby allege as true, that even if the Plaintiffs or Putative Class members are actually successful in "opting out" as RDI describes, anytime they subsequently visit a website or otherwise come into digital Internet contact with any one of RDI's unknown and unannounced customers, the RDI Platform immediately recognizes their cellular phones or "smart phones" and other mobile, hand-held digital cellular devices by the Digital Media Stamp that has been placed upon each of those devises and can not be deleted without, at least, purchasing and installing a new SIM Card on the device.

53.     Despite what RDI attempts to make the Plaintiffs and the Putative Class members believe concerning its so-called ability to "opt-out" from its system, the Plaintiffs and Putative Class Members have no means of determining if and when any actions they take by their devise in the mobile environment places them "back in" to the RDI Platform and, therefore, subject to having their confidential data and personally identifiable information made available for any purpose to any of RDI's customers.

54.     The tracking number easily could easily fit inside a normal web cookie, but such is inadequate to RDI's true purpose because users and web browsers have become much more sophisticated about managing tracking cookies.

55.     By RDI's exploitation of HTML5's client-side data storage capabilities, Plaintiffs hereby allege that RDI intentionally and willfully utilizes a system of technology which allows RDI and its customers to bypass the all of the safe Internet browsing protections and devise settings of common Internet browsers, knowing that such is primarily designed to allow Internet users (i.e., the Plaintiffs and the Putative Class members) to make informed and advance choices with regard to their browsers' collection or allowance of traditional web cookies.

56.     Plaintiffs hereby allege, based upon the facts stated herein that RDI's actions described herein represent an intentional circumvention of virtually all Internet privacy protections used by the Plaintiffs' and the Putative Class members'.  While Web Storage may offer numerous benefits to cookies, the only benefit relevant to a small unique ID being used for tracking purposes is the lack of implemented privacy and user-level control of this storage space. Defendants make use of this new technology in an invidious attempt to stay ahead of the user's ability to adapt in the race for control over user data and habits.

## IV.
## ALLEGATIONS SUPPORTING CERTIFICATION AS A CLASS ACTION

57.     The period of time the for which relief is herein sought for the benefit of the Plaintiffs and the Putative Class extends, at least, to the date four (4) years preceding the date of this filing to the date of this lawsuit to the date that any member of the Putative Class accessed an RDI customer's website and a whose cellular phones or "smart phones" and other mobile, hand-held digital cellular devices were subject to the RDI Digital Media Stamp, the RDI Platform, that have been made subject to "tracking" or HTML5 data "capturing" or in

any means subject to any exposure to RDI and/or its customers computer, web or Internet systems (HTML or otherwise) from which any data, information and any and all other physical, digital and electronic content stored upon or by any means discovered or accessible by means of any of said persons' cellular phone or "smart phone" and other mobile, hand-held digital cellular device. (hereinafter, the "Class Period").

58.     Pursuant to Federal Rule of Civil Procedure 23(a), (b)(1),(2), and (b)(3), Plaintiffs seek certification of a class action for RDI's violations of law, including:

- The federal "Computer Fraud and Abuse Act" (hereinafter, "CFAA");
- The federal "Electronic Communications Privacy Act" (hereinafter, "ECPA");
- Common law "Invasion of Privacy By Intrusion Upon Seclusion";
- Common law "Trespass to Chattels and Misappropriation";
- Common law "Conversion";
- Common law "Unjust Enrichment"; and,
- Violations of Texas' Deceptive Trade Practices Act.

59.     Plaintiffs hereby submit that certification pursuant to Rule 23, Fed. R. Civ. P., is appropriate in this case as the factors for consideration by the Court for the same are hereby alleged to be present in this case, including without limitation the following.

**A.     Numerosity of Plaintiffs/Class Members**.

60.     The members of the Putative Class are so numerous that their individual joinder is impracticable and, therefore, Plaintiffs are informed and believe, and on that basis herein allege, that the Putative Class contains at least hundreds of thousands of members.

61.     Upon information and belief, the Putative Class members can be identified by the RDI Platform and or other electronic records of in the custody and control of RDI.

62.     The precise number of Putative Class members is unknown to Plaintiffs at the time of the filing of this pleading but the true number of Putative Class members is, in fact, known by RDI, and, thus, may be notified of the pendency of this action by first class mail, electronic mail, and by published appropriate notice.

**B.      Commonality of Claims In The Putative Class.**

63.     Rules 23(a)(2) and Rule 23(b)(3), Fed. R. Civ. P., are satisfied under the facts of this case because there exists common questions of law and fact between each of the plaintiffs and the Putative Class.

63.     These common questions of law and fact predominate over any individual questions, which may effect only certain individual members of the Putative Class.

**C.      Typicality Of Claims Among the Putative Class Members.**

64.     Plaintiffs' claims are typical of the claims of the members of the Putative Class in that each of the Plaintiffs and each member of the Putative Class are alleged to have, and in fact have, accessed an RDI customer's website and a whose cellular phones or "smart phones" and other mobile, hand-held digital cellular devices were subject to the RDI Digital Media Stamp, the RDI Platform, that have been made subject to "tracking" or HTML5 data "capturing" or in any means subject to any exposure to RDI and/or its customers computer, web or Internet systems (HTML or otherwise) from which any data, information and any and all other physical, digital and electronic content stored upon or by any means discovered or accessible by means of any of said persons' cellular phone or "smart phone" and other mobile, hand-held digital cellular device.

**D.      Adequacy of Representation By Class Representatives.**

65.      Plaintiffs avow, and hereby allege, that each of them will fairly and adequately protect the interests of the members of the Putative Class in the pursuit of the causes of action stated in this case.

66.      Plaintiffs avow, and hereby allege, that each of them intend to vigorously represent the interests of the Putative Class Members and, further, that none of them maintain and interests which are adverse thereto.

**E.      Adequacy of Representation By Plaintiffs' Attorneys As Class Counsel.**

67.      Plaintiffs have retained attorneys to act and serve the Putative Class as Class Counsel, upon approval by the Court, which Plaintiffs hereby allege are each highly experienced in complex litigation, including consumer class action cases.

**F.      Judicial Economy Favors Resolution Of These Claims By Class Action.**

68.      Plaintiffs hereby allege that the class action device available to the Court and the litigants under Rule 23 of the Federal Rules of Civil Procedure is, in fact, superior as a means or mode to fairly and efficiently adjudicate this controversy for purposes of judicial economy and, further, to avoid multiplicity of actions and, thus, inconsistent judgments.

69.      Plaintiffs hereby allege that the if the Putative Class members could afford such individualized litigation, the court system could not because individualized litigation would create the danger of inconsistent or contradictory judgments arising from the same set common or operative of facts.

70.     Plaintiffs hereby allege that the financial damages and other legal and equitable detriments which may have been suffered by certain individual members of the Putative Class is relatively small compared to the burden and expense that would be entailed by individual litigation of their claims against the RDI.

71.     Plaintiffs hereby allege that the it would thus be virtually impossible for the Putative Class, on an individual basis, to obtain effective redress for the wrongs done to them, as alleged herein.

72.     Further, Plaintiffs hereby allege that individualized litigation would also increase the delay and expense to all parties and the court system from the issues raised by this case.

73.     Finally, Plaintiffs hereby allege that the class action device provides the benefit of adjudication of all of the Putative Class members' claims in a single proceeding and, therefore, important factors and considerations such as the economies of scale and comprehensive supervision by this Court would create no management difficulties under the circumstances to arise in the Plaintiffs' prosecution of this case.

## V.

### PLAINTIFFS' CAUSES OF ACTION

### COUNT ONE:
### Violations of the Computer Fraud and Abuse Act, 18 U.S.C. § 1030

74.     Plaintiffs hereby restate and re-allege each of the foregoing allegations contained in paragraphs 1 through 72, inclusive herein.

75.     The federal "Computer Fraud and Abuse Act," 18 U.S.C. §1030(a)(2)(C), imposes civil liability, for violations thereof, upon those whom intentionally accesses a computer without

authorization, or otherwise exceeds any claim of authorized access thereto, and thereby obtains information from any protected computer.

76.     Pursuant to the terms of CFAA, any person that has suffered damage or loss by reason of a violation of CFAA may maintain a civil action against the violator to obtain compensatory damages, injunctive relief or other equitable relief.

77.     By creating and storing uniquely identifying the IP Address of each of the Plaintiffs' and Putative Class members' cellular phones or "smart phones" and other mobile, hand-held digital cellular devices, imposing upon each of them the Digital Media Stamp and assigning and using "tracking numbers" on each of the Plaintiffs' and Putative Class members' cellular phones or "smart phones" and other mobile, hand-held digital cellular devices, RDI (acting individually or in concert with others, non-parties hereto) have, in fact, acted in without authorization and/or excess of any claim to a permissible authorization to each of the Plaintiffs' and Putative Class members' cellular phones or "smart phones" and other mobile, hand-held digital cellular devices and in direct violation of CFAA, 18 U.S.C. § 1030(a)(2)(C).

78.     Plaintiffs hereby allege that RDI's actions complained of herein, and specifically those committed in violation of CFAA as is alleged herein, were committed in the course of and in interstate commerce and/or communications.

79.     Plaintiffs hereby allege that RDI's actions complained of herein, and specifically those committed in violation of CFAA as is alleged herein and were committed with actual knowledge of the unlawfulness thereof, and specifically in violation of the terms of CFAA, and/or were done so with reckless disregard for the same.

80.     Each of the Plaintiffs' and the Putative Class Members' cellular phones or "smart phones" and other mobile, hand-held digital cellular devices constitute "computers" as that terms

is used and intended in CFAA and, therefore, are protected pursuant to 18 U.S.C. § 1030(e)(2)(B).

81. Plaintiffs hereby allege that RDI violated CFAA by causing the transmission of a program, information, code or command and, as a result, caused harm to the Plaintiffs' and the Putative Class Members' cellular phones or "smart phones" and other mobile, hand-held digital cellular devices, as protected computers under the terms of CFAA, of which the damages thereto are aggregated to exceed in value at least $5,000.

## COUNT TWO:
### (Violations of the Electronic Communications Privacy Act of 1986, 18 U.S.C. § 2510)

82. Plaintiffs hereby restate and re-allege each of the foregoing allegations contained in paragraphs 1 through 80, inclusive herein.

83. The Electronic Communications Privacy Act of 1986 regulates wire and electronic communications interception and interception of oral communications, and makes it unlawful for a person to "willfully intercept[], endeavor[] to intercept, or procure[] any other person to intercept or endeavor to intercept, any wire, oral, or electronic communication," within the meaning of 18 U.S.C. § 2511(1).

84. Plaintiffs hereby allege that RDI violated 18 U.S.C. § 2511 by intentionally acquiring and/or intercepting, by device or otherwise, each of the Plaintiffs' and Putative Class members' "electronic communications," as that term is used and intended within the language and purposes of ECPA, without any of their knowledge, consents, or authorizations.

85. The contents of data transmissions from and to the Plaintiffs' and the Putative Class Members' cellular phones or "smart phones" and other mobile, hand-held digital cellular devices, as personal computers under the terms of ECPA, "electronic communications" within the meaning of 18 U.S.C. §2510.

86.    Each of the Plaintiffs and Putative Class members are "person[s] whose …
electronic communication is intercepted […] or intentionally used in violation of this
chapter," within the meaning of 18 U.S.C. § 2520.

87.    Plaintiffs hereby allege that RDI violated 18 U.S.C. § 2511(1)(a) by intentionally
intercepting, endeavoring to intercept, or procuring any other person to intercept or endeavor
to intercept each of the Plaintiffs' and Putative Class members' electronic communications.

88.    Plaintiffs hereby allege that RDI violated 18 U.S.C. § 2511(1)(c) by intentionally
disclosing, or endeavoring to disclose, to any other person the contents of Plaintiffs'
electronic communications, knowing or having reason to know that the information was
obtained through the interception of each of the Plaintiffs' and Putative Class members'
electronic communications.

89.    Plaintiffs hereby allege that RDI violated 18 U.S.C. § 2511(1)(d) by intentionally
using, or endeavoring to use, the contents of Plaintiffs' electronic communications, knowing
or having reason to know that the information was obtained through the interception of each
of the Plaintiffs' and Putative Class members' electronic communications.

90.    Plaintiffs hereby allege that RDI's intentional interception of these electronic
communications without any of the Plaintiffs' or Putative Class members' knowledge,
consents, or authorizations were undertaken without a facially valid court order or
certification.

91.    Plaintiffs hereby allege that RDI intentionally used such electronic
communications, with knowledge, or having reason to know, that the electronic
communications were obtained through interception, for an unlawful purpose.

92.     Plaintiffs hereby allege that RDI unlawfully accessed and used, and voluntarily disclosed, the contents of the intercepted communications to enhance their profitability and revenue through advertising.

93.     Plaintiffs hereby allege that such disclosures of the contents of said intercepted communications was not necessary for the operation of RDI's business or to protect any claimed' rights or property.

94.     Plaintiffs hereby allege that ECPA, 18 USC §2520(a), provides Plaintiffs and the Putative Class members a civil cause of action to "any person whose wire, oral, or electronic communication is intercepted, disclosed, or intentionally used" in violation of the ECPA, which the allegations contained herein constitute and otherwise set forth.

95.     Plaintiffs hereby allege that RDI is liable directly and/or vicariously for this cause of action and the Plaintiffs, therefore, seek remedies as provided for by 18 U.S.C. §2520, including all preliminary and equitable relief as may be deemed appropriate, including actual, compensatory, consequential and punitive damages allowable by the terms thereof, and reasonable attorneys fees and costs of court as determined at the time of trial.

**COUNT THREE:**
**(Invasion of Privacy By Intrusion Upon Seclusion)**

96.     Plaintiffs hereby restate and re-allege each of the foregoing allegations contained in paragraphs 1 through 94, inclusive herein.

97.     Plaintiffs hereby allege that RDI, by causing uniquely identifying tracking numbers, the Digital Media Stamp, to be created and stored on the Plaintiffs' and the Putative Class Members' cellular phones or "smart phones" and other mobile, hand-held digital cellular devices and computers, RDI has intentionally intruded upon each of the Plaintiffs' and the Putative Class members' solitude, seclusion, or private affairs.

98.     Plaintiffs hereby allege that such intrusions by RDI would be, and in fact are, highly offensive to a reasonable person and, furthermore, were done by RDI without any authorization or consent of any of the Plaintiffs or Putative Class members.

99.     Plaintiffs hereby allege that such intrusions by RDI enjoyed no legitimate public purpose and, in fact, such intrusions by RDI violated public policy and the Plaintiffs' and the Putative Class members' individual rights of privacy.

100.    Plaintiffs hereby allege that RDI's actions complained of herein caused harm to the Plaintiffs and the Putative Class members, in an amount to be proven at the trial in this cause.

101.    Plaintiffs hereby allege that the Plaintiffs and the Putative Class members shall seek, and are entitled to the recovery of, damages remedial for this harm as well as injunctive relief to prevent future harm.

### COUNT FOUR:
### (Trespass to Chattels and Misappropriation)

102.    Plaintiffs hereby restate and re-allege each of the foregoing allegations contained in paragraphs 1 through 100, inclusive herein.

103.    Plaintiffs hereby allege that, as a result of RDI's actions complained of herein, RDI has been unjustly enriched.

104.    Plaintiffs hereby allege that RDI's actions complained of herein constitute intentional dispossessing of the each of the Plaintiffs' and the Putative Class Members' "chattel" (i.e., each of their cellular phones or "smart phones" and other mobile, hand-held digital cellular devices and computers) or otherwise using or intermeddling with said cellular phones or "smart phones" and other mobile, hand-held digital cellular devices and computers which, at all times material, were in the digital possession, control or access of RDI.

105.    Plaintiffs hereby allege that RDI's actions complained of herein constitute actionable claims for "Trespass to Chattels" and, likewise, "Misappropriation" as such claims clearly lie in circumstances such as the facts alleged herein, is Plaintiffs hereby allege that RDI, based upon its conduct described herein, acted upon its intentional interference with the possession of the personal property of the Plaintiffs and Putative Class members (*i.e.,* each of their cellular phones or "smart phones" and other mobile, hand-held digital cellular devices and computers) and, furthermore, that RDI's complained-of trespass to chattels and misappropriation has proximately cause injury and damages to each of the Plaintiffs and Putative Class members, all in amounts to be proven at the trial in this cause.

106.    Plaintiffs hereby further allege that RDI's actions complained of herein constitute RDI's intentionally use or intermeddling with the personal property of the Plaintiffs and Putative Class members which, at all times material, was in the in rightful possession of the Plaintiffs and Putative Class members, to which RDI's actions relative thereto was without authorization and, therefore, RDI is liable to each of the Plaintiffs and the Putative Class members for value or diminution created by the acts of RDI complained of herein which, as it is specifically alleged herein, have impaired the conditions, quality, and values of each of the Plaintiffs' and the Putative Class Members' cellular phones or "smart phones" and other mobile, hand-held digital cellular devices and computers.

### COUNT FIVE:
### (Conversion)

107.    Plaintiffs hereby restate and re-allege each of the foregoing allegations contained in paragraphs 1 through 105, inclusive herein.

108.    Plaintiffs hereby allege that RDI's actions complained of herein in causing uniquely identifying tracking numbers, the Digital Media Stamp, to be created, stored and

branded upon each of the Plaintiffs' and Putative Class members' cellular phones or "smart phones" and other mobile, hand-held digital cellular devices and computers, RDI wrongfully exercised dominion or control over the Plaintiffs' and Putative Class members' cellular phones or "smart phones" and other mobile, hand-held digital cellular devices and computers.

109.    Each of the Plaintiffs' and Putative Class members' class owned, possessed, or had the right to immediate possession of their cellular phones or "smart phones" and other mobile, hand-held digital cellular devices and computers, which constitute personal property individually belonging to each of the Plaintiffs' and Putative Class members'.

110.    Plaintiffs hereby allege that RDI's actions complained of herein demonstrate RDI having exercised of dominion over the Plaintiffs' and Putative Class members' cellular phones or "smart phones" and other mobile, hand-held digital cellular devices and computers and, as a result thereof, RDI's  actions complained of herein have, in fact, caused actual, and not merely theoretical, harm each of the Plaintiffs and Putative Class members.

111.    Plaintiffs and Putative Class members hereby seek actual, compensatory, consequential and punitive damages for this harm, in amounts to be proven at the trial of this cause, as well as injunctive relief to prevent future harm.

### COUNT SIX:
### (Unjust Enrichment)

112.    Plaintiffs hereby restate and re-allege each of the foregoing allegations contained in paragraphs 1 through 110, inclusive herein.

113.    Plaintiffs hereby allege that RDI's actions complained of herein threatened the public safety by violating the privacy rights of each of the Plaintiffs and the Putative Class Members.

114.     Plaintiffs hereby allege that, as a result of RDI's actions complained of herein, RDI has been unjustly enriched.

115.     The Plaintiffs and the Putative Class Members were each injured as a result of the RDI's actions complained of herein and, therefore, Plaintiffs' seek to recover and otherwise obtain compensatory damages, injunctive relief or other equitable relief.

116.      Plaintiffs hereby allege that, as a result of RDI's actions complained of herein, that each of the Plaintiffs and the Putative Class Members are entitled to the imposition of a constructive trust upon the sum of which RDI has been unjustly enriched as a result of its actions complained of herein.

117.     Accordingly, Plaintiffs hereby see the imposition by this Court of the imposition of a constructive trust a consequence of the stated unjust enrichment.

**COUNT SEVEN:**
**(Violations of the Texas Deceptive Trade Practices Act)**

118.     Plaintiffs hereby restate and re-allege each of the foregoing allegations contained in paragraphs 1 through 117, inclusive herein.

119.     Each of the Plaintiffs and the Putative Class Members are "consumers" under the terms of the Texas Deceptive Trade Practices Act (hereinafter, "DTPA") because each of the Plaintiffs and the Putative Class Members are individuals whom sought goods/services by purchase/lease.

120.     Plaintiffs hereby allege that RDI is a corporation, which may be sued under the terms of the DTPA.

121.      Plaintiffs hereby allege that RDI violated the DTPA when it:

- Engaged in false, misleading, or deceptive acts or practices that each of the Plaintiffs and the Putative Class Members relied on to each of the Plaintiffs' and the Putative Class Members' detriments;

- Caused confusion or misunderstanding to each of the Plaintiffs and the Putative Class Members about affiliation, connection, or association with another;

- Failed to inform any of the Plaintiffs and the Putative Class Members of the connection between the advertisements on their site and the RDI Digital Media Stamp tracking devices, which allowed (and currently allows) RDI to "track" each of the Plaintiffs and the Putative Class Members across multiple websites and, as well, physically;

- Engaged in an unconscionable action or course of action that, to each of the Plaintiffs' and the Putative Class Members' detriments;

- Took advantage of each of the Plaintiffs' and the Putative Class Members' lack of knowledge, ability, experience, or capacity to a grossly unfair degree.

- Caused uniquely identifying tracking numbers, the Digital Media Stamp, to be created, stored and branded upon each of the Plaintiffs' and Putative Class members' cellular phones or "smart phones" and other mobile, hand-held digital cellular devices and computers using the features of the Plaintiffs' and Putative Class members' web browsers for the purpose of tracking the Plaintiffs and Putative Class members and each of the Internet usages; and,

- Branding with its Digital Media Stamp tracking numbers which cannot be removed by the ordinary user, and even if removed, can be placed again immediately after removal, effectively making it impossible for the Plaintiffs and Putative Class members to stop the Digital Media Stamp tracking numbers from

being placed by RDI on the Plaintiffs' and Putative Class members' cellular phones or "smart phones" and other mobile, hand-held digital cellular devices and computers.

122.    Plaintiffs hereby allege that RDI's wrongful conduct, as alleged herein, was a producing cause of the Plaintiffs' and Putative Class members' complained of damages and injuries caused by said conduct, which has caused actual and mot merely theoretical harm to the Plaintiffs and Putative Class members.

123.    Plaintiffs hereby seek the full recovery of the Plaintiffs' and Putative Class members' unliquidated damages within the jurisdictional limits of this Court.

124.    Furthermore, because Plaintiffs hereby allege that RDI's actions complained of herein were intentional, the Plaintiffs and the Putative Class members are entitled to recover treble damages pursuant to the terms of Texas Business & Commerce Code section 17.50(b)(1).

125.    Finally, Plaintiffs and Putative Class members are additionally entitled to recover reasonable and necessary attorney fees for prosecuting this suit, pursuant to the terms of Texas Business & Commerce Code section 17.50(d).

WHEREFORE, Plaintiffs demand judgment on their behalf and on behalf of the other members of the Putative Class to the following effect:

a.   Declaring that this action may be maintained as a Class Action;

b.   Granting judgment in favor of Plaintiffs and the other members of the Putative Class against the RDI;

c.   Imposition of a constructive trust as a consequence of the unjust enrichment to the RDI;

d.   Treble and/or punitive damages should the Court find that RDI acted in willful or reckless disregard of the law;

e.   Temporary, preliminary and permanent injunctive relief preventing RDI from further using or gaining access to the Plaintiffs' and Putative Class members' cellular phones or "smart phones" and other mobile, hand-held digital cellular devices and computers; and,

f.   Such other relief as the Court deems appropriate.

## IV.

## <u>DEMAND FOR JURY TRIAL</u>

Plaintiffs hereby demand a trial by jury of all issues so triable.

Respectfully submitted,

**THE COREA FIRM P.L.L.C.**

/s/ Thomas M. Corea _____
Thomas M. Corea
Texas Bar No. 24037906
Jessica Sharma Graham
Texas Bar No. 24045967
1201 Elm St, Suite 4150
Dallas, Texas 75270
Telephone:     214.953.3900
Facsimile:     214.953.3901

**THE MANN FIRM**
J. Mark Mann
Texas Bar No. 12926150
300 W. Main
Henderson, TX 75652
Telephone:     903.657.8540
Facsimile:     903.657.6003

**OTSTOTT & JAMISON, P.C.**
George A. Otstott
Texas Bar No. 15342000
Ann Jamison
Texas Bar No. 000798278
Two Energy Square
4849 Greenville Avenue, Suite 1620
Dallas, Texas 75206
Telephone:     214.522.9999
Facsimile:     214.828.4388
**ATTORNEYS FOR PLAINTIFFS**